569 A.2d 428

**EVANSBURG WATER COMPANY, Appellant,**

**v.**

**PERKIOMEN TOWNSHIP, and Perkiomen Township Municipal Authority, and Greenview Estates, Inc., and Cranberry Corporation, Appellees.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 12, 1989.

Decided Feb. 2, 1990.

Petition for Allowance of Appeal Denied Aug. 15, 1990.

Arthur J. King, Collegeville, with him, Gloria D. Flynn, for appellant.

Philip R. Detwiler, Sol., Philip R. Detwiler & Associates, P.C., Blue Bell, (Paul J. Winterhalter, Ciardi, Fishbone & DiDonato, Philadelphia, of counsel), for appellees, Perkiomen Tp. and Tp. Mun. Authority.

James J. Heffernen, for appellees, Greenview Estates, Inc. and Cranberry Corp.

Before CRUMLISH, Jr., President Judge, McGINLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Evansburg Water Company (Evansburg) has appealed from an order of the Court of Common Pleas of Montgomery County denying its request for a preliminary injunction.

Evansburg is a privately-owned water company which presently services a 238–home development in Perkiomen Township (Township). Evansburg's franchise area was authorized by the Public Utility Commission (PUC) in 1976 when it issued a Certificate of Public Convenience to Evansburg. Evansburg subsequently filed with the PUC to expand its service area to include the entire Township. Although hearings were held, a final decision was never rendered on Evansburg's application, which was apparently lost. Evansburg's president learned of the loss in 1985, but the company chose not to resubmit an application and begin the hearing process anew.

At present, a 620–unit planned residential development is slated for construction in the Township. Greenview Es-

tates, Inc. (Greenview) is the equitable owner of the real estate, titled in the name of Cranberry Corporation (Cranberry). Greenview and Cranberry, as part of their development plans, entered into a contract with the Township whereby they agreed to construct a public water system to service the development and to dedicate the system to the Perkiomen Township Municipal Authority (Authority) upon its completion.

Evansburg filed suit in common pleas court in October 1988, seeking to enjoin the Township and the Authority from establishing this public water system. Greenview and Cranberry were granted permission to intervene. Following three days of testimony on Evansburg's preliminary injunction request, the trial court refused to issue the injunction.

The sole issue before us is whether the trial court erred in denying the request for preliminary injunction. In *Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 269, 479 A.2d 452, 454–55 (1984), our Supreme Court summarized the standard of review on appeal from the grant or denial of a preliminary objection:

'As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.... "In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted." ' (Emphasis deleted; citations omitted.)

Evansburg's entire argument rests upon the language of Section 4A(b)(2) of the Municipality Authorities Act of 1945

(Act),[1] which pertinently provides:

> The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes.

The trial court, relying on our decision in *Northampton v. Bucks County Water & Sewer Authority*, 96 Pa. Commonwealth Ct. 514, 508 A.2d 605 (1986), concluded that the establishment of a public water system in the new development would not compete with Evansburg's *existing* services. Accordingly, it found that no manifest wrong existed.

Evansburg vehemently argues that *Northampton* is without precedential value because it is factually distinguishable in that it involved the duplication of services, rather than competition between suppliers of services. Evansburg submits that these are two distinct protections afforded by the statute, and that each is to be separately evaluated.

In *Northampton*, we rejected a challenge that the defendant's proposed water main extensions would duplicate the plaintiff's existing services where the evidence indicated that the plaintiff *could* supply the additional water *if* the defendant built additional transmission mains and supplied additional water to the plaintiff. We stated:

> Appellants fail to recognize that the plain wording of the statute is such that it prohibits projects which '*shall* duplicate ... *existing* enterprises *serving* substantially the same purposes.' This clause of the statute is phrased in the present tense, it is not worded in such a manner that what Northampton could *possibly* do is in any way

1. Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. § 306A(b)(2).

relevant. It is undisputed that Northampton is not currently providing through its facilities any kind of service that serves substantially the same purpose that the planned water main extensions would.

*Northampton,* 96 Pa. Commonwealth Ct. at 534, 508 A.2d at 615 (emphasis in original).

While it is certainly true that *Northampton* involved potential duplication of services, rather than potential competition between providers of service, we fail to see how that distinction furthers Evansburg's cause. The language of Section 4A(b)(2) which limits the word "duplicate" applies equally to the word "compete." Thus, deleting the non-applicable statutory language, Section 4A(b)(2) prohibits "any project or projects which in whole or in part *shall* ... compete with *existing* enterprises *serving* substantially the same purposes." (Emphasis added.)

In arguing that the Township's and the Authority's competition would be illegal under Section 4A(b)(2), Evansburg focuses upon the latter portion of the statutory language, prohibiting competition with existing enterprises "serving substantially the *same purposes.*" It argues that its purpose is the same as the Township's and the Authority's, i.e. to supply water to Perkiomen Township. It contends that the precise area of service is irrelevant provided the purpose is the same.

The fallacy of this argument is that its success or failure necessarily depends upon how one defines purpose. In a broad sense, both parties' purpose is to supply water. Obviously, if an area were not delineated, then *any* municipal authority intending to supply water would be illegally competing with an existing company. Obviously, that would be an absurd result, and the principles of statutory construction direct that we are to presume that the legislature did not intend such a result. 1 Pa.C.S. § 1922(1). Similarly, if one defines Evansburg's purpose as "to supply water to the entire township," then a municipal authority seeking to supply water to any portion of the township, regardless of whether water service exists there or not,

would be illegally competing. Again, the statute contains no such broad prohibition. Rather, Section 4A(b)(2) speaks of *"project[s]* ... which ... compete with existing enterprises serving substantially the same purposes." (Emphasis added.)

Here, the project at issue is the supply of water to the 620–unit planned residential development. Evansburg does not presently serve, in whole or in part, the area to be developed. Accordingly, we conclude that the provisions of Section 4A(b)(2) are not applicable to the facts of this case.

Evansburg argues that, if we interpret Section 4A(b)(2) in such a narrow fashion, its protections are meaningless since the Public Utility Code, 66 Pa.C.S. §§ 101–3315, already affords it protection from competition within its existing service area. This argument overlooks the fact that Section 4A(b)(2), by its own terms, is intended to benefit the people of the Commonwealth. It is not designed, as Evansburg seems to argue, to afford it some sort of guaranteed right to expand its service area.

As noted above, Section 4A(b)(2) is the sole basis for Evansburg's contentions. Having concluded that it is not applicable upon the facts of this case, we agree with the trial court that Evansburg has failed to establish a clear right to the relief requested. Accordingly, we shall affirm that court's order denying the preliminary injunction request.[2]

## ORDER

AND NOW, this 2nd day of February, 1990, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

---

**2.** Having found no clear right to relief, we find it unnecessary to discuss the other bases the trial court used in denying the preliminary injunction, such as no immediacy of harm, no manifest wrong or injury and the fact that the injunction would cause greater injury to the intervenors.